UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH A MITCHELL,

                Plaintiff,         Civil Action No. 21-10094

v.                                    George Caram Steeh
                                       United States District Judge

COMMISSIONER OF            David R. Grand
SOCIAL SECURITY,            United States Magistrate Judge

                Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 17, 19)**

Plaintiff Keith Austin Mitchell ("Mitchell") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disabled Adult Child ("DAC") benefits under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 17, 19), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Mitchell is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 19)** be **GRANTED**, Mitchell's Motion for Summary Judgment **(ECF No. 17)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. §

405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Mitchell was born on September 29, 1998, making him nineteen years old at the time his application for SSI was filed on September 12, 2018, and twenty years old at the time his application for DAC was filed on October 5, 2018. (PageID.208, 215).[1] He completed up to the 11th grade. (PageID.90). He currently lives in a three-story apartment with his mother and brother. (*Id.*). He has never engaged in full-time work. (PageID.89). Mitchell's alleged disabling conditions include low blood pressure, "neuro cardiogenic sycopathy [sic]," tremors, and migraines. (PageID.230). He alleged a disability onset date of September 12, 2018. (PageID.208, 230).[2]

After Mitchell's applications for SSI and DAC were denied at the initial level on February 4, 2019 (PageID.131, 140), he timely requested an administrative hearing, which was held on December 5, 2019, before ALJ David Kurtz (PageID.86-106). Mitchell, who was represented by attorney Clifford Walkon, testified at the hearing, as did vocational expert ("VE") Stephanee Leech. (*Id.*). On December 31, 2019, the ALJ issued a written decision finding that Mitchell is not disabled under the Act. (PageID.64-80). On November 25, 2020, the Appeals Council denied review. (PageID.53-55). Mitchell timely

---

[1] Standalone citations to "PageID. __" are all to the administrative transcript in this case, which can be found at ECF No. 15.

[2] In his SSI application, Mitchell alleged that his disability began on January 27, 2015, but the ALJ noted that SSI "does not become payable until the month after the month in which the application is filed (20 CFR 416.335)," which was September 12, 2018. (PageID.67, 215).

filed for judicial review of the final decision on January 13, 2021. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Mitchell's medical record, function and disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI and DAC are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Monck v. Comm'r of Soc. Sec.*, 15-1167, 2017 WL 1130025, at *2 (W.D. Mich. Mar. 27, 2017). As it relates to DAC, such disability benefit is available "if such child was under a disability ... at the time he attained the age of 18 or if he was not under such a disability ... at such time but was under a disability ... at or prior to the time he attained ... the age of 22." 42 U.S.C. § 402(d)(1)(G); *see* 20 C.F.R. § 404.350(a). In substance, section 402(d) "provides that a child of an individual entitled to old age or disability insurance benefits is entitled to Child's Insurance Benefits if he is under a disability (as defined by section 223(d) of the Social Security Act) which began before his twenty-second birthday." *Jones v. Sec'y of Health & Human Servs.*, 1990 WL 17265, at *1 n.1 (6th Cir. Feb. 27, 1990); *Behnam v. Comm'r of Soc. Sec.*, No. 20-12876, 2022 WL 814018, at *3 (E.D. Mich. Mar. 17, 2022).

The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

3

for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Mitchell is not disabled under the Act. At Step One, the ALJ found that Mitchell had not engaged in

substantial gainful activity since the alleged onset date of September 12, 2018. (PageID.70). At Step Two, the ALJ found that Mitchell had severe impairments of migraine, essential hypertension, recurrent arrhythmias, and essential tremor. (PageID.70-71). At Step Three, the ALJ found that Mitchell's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.71-72).

The ALJ then assessed Mitchell's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: he can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch, or crawl; can occasionally handle, finger and feel; and must avoid concentrated exposure to extreme heat and all exposure to hazards. (PageID.72).

At Step Four, the ALJ found that Mitchell had no past relevant work. (PageID.78). At Step Five, the ALJ found, based in part on testimony provided by the VE in response to hypothetical questions, that Mitchell is capable of performing light unskilled work as a host (50,000 jobs nationally), tour guide (7,500 jobs), and ticket taker (40,000 jobs). (PageID.79). As a result, the ALJ concluded that Mitchell was not disabled under the Act from September 12, 2018, through the date of the decision. (PageID.80).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has

made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be

6

affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.      Analysis**

In his motion for summary judgment, Mitchell makes two arguments related to the ALJ's consideration of his "neurocardiogenic syncope"[3] and "migraines." First, Mitchell argues that the ALJ "failed to consider the impact of his vocationally significant impairment of neurocardiogenic syncope upon his ability to perform work-related activities." (ECF No. 17, PageID.527-28). Second, Mitchell contends that, despite finding that he "has a severe impairment [of migraines] ... the ALJ failed to accommodate for such impairment in his RFC determination." (*Id.*, PageID.528-29). Both arguments lack merit.

> *1. Mitchell Fails to Show that the ALJ Committed Reversible Error in Assessing His Neurocardiogenic Syncope*

Mitchell first argues that "neurocardiogenic syncope is a severe impairment," but that the ALJ "did not include this condition in his list of [] severe impairments." (ECF No. 17, PageID.527). At Step Two, the ALJ must consider whether a claimant's medically determinable impairment is a "severe [] impairment (*i.e.*, a condition that significantly limits his physical or mental ability to do basic work activities) that meets the duration requirement in § 404.1509 (longer or expected to be longer than a continuous period of at

---

[3] "Neurocardiogenic syncope" and "vasovagal syncope" are used synonymously by the parties and throughout the record. (*See, e.g.*, ECF No. 17, PageID.529) ("neurocardiogenic syncope (also known as vasovagal syncope)"); ECF No. 19, PageID.555 n.3 ("As [Mitchell] acknowledges [], those terms are synonymous").

7

least 12 months), or a combination of impairments that is severe and meets the duration requirement." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 188 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii) and (c)). "Step two has been described as a *de minimis* hurdle; that is, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (quotations omitted); *see Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007). However, "an ALJ's failure to find an impairment severe is not reversible error if the ALJ found another impairment severe, and thus continued with the five-step evaluation process" while considering all of the claimant's impairments. *Lee v. Comm'r of Soc. Sec.*, No. 19-10337, 2020 WL 1139710, at *5 (E.D. Mich. Mar. 9, 2020) (citing *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007)); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (holding that it was "legally irrelevant" that some of claimant's impairments were not deemed to be severe at Step Two where other impairments were deemed severe and the ALJ considered all of the claimants' impairments in the remaining steps of the sequential analysis). As discussed below, a review of the record confirms that Mitchell fails to show any reversible error at Step Two.

First, while Mitchell "submits" that a "condition" such as neurocardiogenic syncope "***may be expected to interfere*** with an individual's ability to perform work-related activities," the applicable regulations make clear that an impairment or combination of impairments is "severe" only if it "***significantly limits*** [an individual's] . . . ability to do basic work activities." 20 C.F.R. § 404.1520(c). Mitchell makes little effort, if at all, to explain, much less prove, that his neurocardiogenic syncope was of such severity that it

8

would cause any *significant* work-related limitations.

Instead, Mitchell asserts that "[t]he record establishes diagnoses of neurocardiogenic syncope or vasovagal syncope," but the mere diagnosis of an impairment does not say anything about its *functional limitations*, which the claimant has the burden of proving. *See, e.g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis ... of course, says nothing about the severity of the condition."); *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) ("Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). The article attached to Mitchell's motion – which discusses common signs and symptoms that "may" accompany neurocardiogenic syncope as a *general* matter (ECF No. 17-1, PageID.533-47) – is of no utility to him either, as the Commissioner correctly points out that the article "say[s] nothing about the *specific* symptoms that [Mitchell] *in particular* actually experienced." (ECF No. 19, PageID.560). In many respects, the article actually works against him, as it provides, for example, that "Neurocardiogenic syncope (also known as vasovagal syncope) is *a benign condition* characterized by a *self limited episode* of systemic hypotension," and even lists "*reassurance* of the patient and others *that this is a benign condition*" as a form of treatment. (ECF No. 17-1, PageID.534, 541).

Next, Mitchell's reliance on his subjective allegations is misplaced, as the ALJ expressly found that Mitchell's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and

9

other evidence in the record . . ." (PageID.78);[4] *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("an ALJ is not required to accept a claimant's subjective complaints"). While Mitchell argues in his reply brief that the ALJ's decision "never rejects outright the presence of syncopal episodes" and so "never discounted [his] syncopal episodes" (ECF No. 20, PageID.572), a review of the ALJ's decision clearly reflects that the ALJ considered the record evidence concerning Mitchell's neurocardiogenic syncope and reasonably found that such condition caused no more than minimal limitations in Mitchell's ability to do basic work activities.

To start, the ALJ specifically noted Mitchell's hearing testimony that "he is unable to work due to a heart condition called neurocardiogenic syncope," and "[a]s far as his neurocardiogenic syncope, he testified that he does not have it daily, but does experience the symptoms of it daily, which include lightheadedness, drowsiness, blurred vision, and racing heart," and can last "four or more hours," which renders him "unable to do anything." (PageID.74; *see* PageID.91-93). But the ALJ found that "the evidence of record as a whole does not support the extent of functional limitation subjectively alleged" by Mitchell, pointing out that Mitchell "himself testified he has a driver's license and drives most of the time," he takes "prescription Ibuprofen for his headaches, which does help, and he believes does not cause any side effects" and "is not aware of any side effects from his other medications either," his "symptoms have not worsened, and they are currently staying

---

[4] Mitchell does not challenge the ALJ's assessment of his subjective complaints, and any such challenge is waived. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (undeveloped claims are waived).

10

the same," and he has not had "any recent trips to the hospital or emergency room" nor "any changes to his treatment in the last twelve months." (PageID.73; *see* PageID.90, 93-95, 101-02). The ALJ also considered Mitchell's testimony that he can stand, walk, and/or sit "as long as he needs to as long as he does not have a syncopal episode," and his activities of daily living, including no issues with "handling his own personal care, such as bathing and dressing." (PageID.73; *see* PageID.96-98). The ALJ noted the same from Mitchell's function report, which indicates that, despite subjective allegations as to the limitations of his syncope, Mitchell was also able to "provide care for his dogs [and] cats," he could "prepare snacks and oven made foods for himself daily," he was able to do some "housework" like tidying his room, and he could "go out alone" as needed. (PageID.74; *see* PageID.243-48).

Moreover, in assessing "mild" limitations for the "paragraph B" criteria, the ALJ acknowledged that "[t]he medical evidence of record reveals continued symptoms from [Mitchell's] diagnoses," but that such symptoms "could be expected to cause only a very slight level of limitation with regard to [concentrating, persisting, or maintaining pace]" and "have remained stable on his current treatment regimen," and that his "symptoms seemed to be very well controlled to this point" in regards to "understanding, remembering or applying information." (PageID.70-71). The ALJ also determined these findings to be corroborated by the January 25, 2019 medical evaluation from state agency consultant Dr. Jerry Csokasy, PhD, who considered evidence of Mitchell's "Neurocardiogenic Syncope" and "Migraines" and assessed only "mild" limitations in his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain

11

pace; and adapt or manage oneself. (*Id.*; PageID.110-12). In fact, Dr. Csokasy even concluded that the medical "records support a **MEDIUM RFC** with limits to certain heights and hazards; overall, [Mitchell] is capable of adjusting to other work." (PageID.111) (emphasis added).[5] Finally, the ALJ's decision reflects his consideration of Mitchell's history of reported syncopal episodes and diagnoses of neurocardiogenic syncope spanning from March 2016 through July 2019. (PageID.75).[6]

---

[5] The Court notes that, on May 10, 2019, Nurse Practitioner Mark Folts opined, in relevant part, that Mitchell's "Vasovagal Syncope," "Fine Tremor" and "Cardiac Arrythmia" would "Frequently" interfere with "the attention and concentration needed to perform even simple work tasks." (PageID.398). But the ALJ found Folt's opinion to be "not persuasive because it is not supported by [] Folt's own clinical findings and is not consistent with the other longitudinal objective evidence of record" (PageID.78), and Mitchell does not rely on or even mention Folt's opinion, much less challenge the ALJ's assessment of it, in his briefing. *See Kennedy*, 87 F. App'x at 466 (undeveloped claims are waived).

[6] For example, the ALJ pointed to treatment records indicating "his symptoms tend to happen around the time he plays soccer" or may otherwise occur "during exercise" (PageID.75; *see also* PageID.344 (Treatment note in March 2016 indicating "[h]is symptoms tend to happen around the time he plays soccer")); PageID.500-02 ("prior history of presyncopal and syncopal complaints" but "structurally normal heart as demonstrated by 12-lead electrocardiogram and 2-D echo" and "no symptoms during exercise, no family history of sudden cardiac death and a clinical picture which is consistent with neurocardiogenic syncope . . ."). The ALJ also noted that his "Neurological exam was normal," which is consistent throughout the medical record despite his subjective complaints of symptoms. (PageID.76; *see also, e.g.*, PageID.287 (reported "headaches are mostly controlled and no syncopal episodes," and exam was unremarkable with "Attention and concentration normal" in March 2016); PageID.293 ("doing well academically in school" and assessed with "Normal neuro exam" in November 2016); PageID.295 ("No syncope and no chest pain or anxiety attacks," "doing well academically," and unremarkable exam in January 2017); PageID.320-23 (normal neurological exam in September 2017); PageID.310-11 (normal exam and denies feeling poorly, feeling tired, headache, numbness, confusion, dizziness, and fainting in October 2017); PageID.304-06 ("doing well in no acute distress currently," "denies any chest pain, lightheadedness, dizziness," and unremarkable objective exam in October 2018); PageID.364 ("resting tremor" but otherwise normal objective exam in January 2019); PageID.480-83 ("resting tremor" but otherwise unremarkable objective exam in July 2019). The ALJ even assessed whether it was Mitchell's "recurrent arrhythmias" that may have "result[ed] in uncontrolled, recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment," but found that to be unsupported by the "medical evidence of record." (PageID.72, 76; *see also* PageID.304-

Even assuming his neurocardiogenic syncope was a severe impairment, Mitchell fails to show reversible error where "the ALJ found another impairment severe, and thus continued with the five-step evaluation process" while considering all of his impairments. *Lee*, 2020 WL 1139710, at *5; *Anthony*, 266 F. App'x at 457. Mitchell's contention in his reply brief that the *Commissioner* "cannot show that the ALJ considered or accounted for [his] neurogenic syncope" is not only belied by the above discussion of the ALJ's decision, but also impermissibly attempts to shift *his* burden at Step Two onto the Commissioner. (PageID.571); *Preslar*, 14 F.3d at 1110. Indeed, the Commissioner points out that, because "[h]eat exposure is a common trigger for syncope" (ECF No. 19, PageID.558 n.5), the ALJ's RFC included that Mitchell "must avoid concentrated exposure to extreme heat." (PageID.72). This too is supported by Mitchell's own article, which provides that "Education, the mainstay of treatment [for neurocardiogenic syncope], includes avoidance of predisposing situations (for example, . . . ***extremely warm environments*** [])." (ECF No. 17-1, PageID.541).

Finally, to the extent Mitchell argues in conclusory fashion that the ALJ "never considered whether neurocardiogenic syncope, considered either by itself, or in combination with [his] other impairments, satisfies [a listed impairment]" (ECF No. 17, PageID.527), he again makes no effort at meeting *his* "burden" at Step Three to "present specific medical findings that satisfy the various tests listed in the description of the applicable impairment," *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004),

---

06 ("previous echo, treadmill stress test, and ambulatory monitors as mentioned in HPI without clear correlation of [reported] symptoms [of neurocardiogenic syncope] and arrhythmia.").

13

let alone identify which specific Listing he contends his neurocardiogenic syncope could meet or medically equal.

In short, even if Mitchell's neurocardiogenic syncope could be considered a "severe" impairment, Mitchell fails to show any reversible error where the ALJ's decision reflects a thorough review and reasonable consideration of evidence concerning neurocardiogenic syncope in assessing his RFC.[7] *See Anthony*, 266 F. App'x at 457. As detailed above, Mitchell simply fails to satisfy *his* burden to identify and prove that he required additional or stricter syncope-related limitations than the ALJ assessed. *Jordan*, 548 F.3d at 423.

### 2. Mitchell Fails to Show that the ALJ Committed Reversible Error in Accounting for His Migraines in the RFC

Next, Mitchell argues that the ALJ failed to accommodate his "severe" impairment of migraines in the RFC finding. (ECF No. 17, PageID.528-29). Notably, however, his motion for summary judgment on this issue rests on a conclusory, two-paragraph argument that fails to identify the additional functional limitations he contends the ALJ should have assessed in the RFC, much less any specific evidence that would support any such limitations. Indeed, such a cursory argument is sufficient grounds to deem this issue as waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most

---

[7] The ALJ's decision references Mitchell's syncope more than two dozen times, and devotes portions of 17 separate paragraphs to discussing the evidence related to that condition.

14

skeletal way, leaving the courts to . . . put flesh on its bones."); *see also Moats v. Comm'r of Soc. Sec.*, No. 20-00265, 2021 WL 2905079, at *18 (N.D. Ohio Jan. 8, 2021). At a minimum, Mitchell's argument falls well short of his burden "of proving the existence and severity of limitations caused by his impairments" and "that he has a more restrictive RFC than that assessed by the ALJ." *Lee*, 2020 WL 1139710, at *6 (citing *Jones*, 336 F.3d at 474, and *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d at 423).[8]

In any case, the argument Mitchell sets forth lacks merit. Specifically, he contends that, because the ALJ found his migraines to be a severe impairment, they "would be expected to significantly interfere with [his] ability to engage in work-related activities," but the "functional limitations included by the ALJ in his RFC determination have not been shown to have any relevance to [his] current migraine headache condition." (*Id.*, PageID.529). Such contention is contradicted, for example, by Dr. Csokasy's medical evaluation, which the ALJ clearly reviewed, regarding evidence of "migraines" and concluding that those medical "records support a MEDIUM RFC with ***limits to certain heights and hazards***," which are included in the ALJ's RFC. (PageID.111 (emphasis

---

[8] Mitchell argues for the first time in his reply brief that the *Commissioner* "has not shown how the[] limitations in the [ALJ's RFC finding] would accommodate [his] interference with concentration or ability to stay on task caused by his headaches," and that the ALJ "never considered whether work in a dark room is possible" even though he "testified that he needs to be in a dark room when he has headaches." (ECF No. 20, PageID.573). But Mitchell does not challenge the ALJ's "paragraph B" assessment, which found no more than minimal limitations in "concentrating, persisting or maintaining pace." (PageID.71) ("The limitations identified in the 'paragraph B' criteria are not a [RFC] assessment .... [but] [t]he following [RFC] assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis"). As to a dark room, the ALJ found that Mitchell's testimony as to his symptoms is not supported by the objective medical record, and, as noted earlier, Mitchell waived any challenge to that finding.

15

added); PageID.71-72).[9]

In short, Mitchell, who bears the burden of establishing his functional limitations, wholly fails to identify and prove the existence and severity of any additional limitations the ALJ should have assessed based on his migraines. *Lee*, 2020 WL 1139710, at \*6. He cannot meet his burden by merely asking the Court to assume that, because his migraines were considered "severe" impairments, the ALJ's RFC was insufficient to "allow [him] to continue working during migraine activity." (ECF No. 17, PageID.529); *Preslar*, 14 F.3d at 1110.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 19)** be **GRANTED**, Mitchell's Motion for Summary Judgment **(ECF No. 17)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

---

[9] Moreover, as discussed above, it can be reasonably inferred that the ALJ did not find Mitchell's migraines to be of a severity requiring any additional functional limitations from reviewing the ALJ's "paragraph B" assessment and discussion of Mitchell's hearing testimony, his function report, and the medical record of migraines that were "mostly controlled," "w/o aura," "not intractable," and "without status migrainosus" – in other words, *less severe* and treatable with medications. (PageID.75-76); *see Mehay v. Comm'r of Soc. Sec.*, No. 19-12991, 2021 WL 1175285, at \*5-6 (E.D. Mich. Mar. 29, 2021) ("The RFC does not need to reflect impairments if the record supports a finding that the impairments do not result in functional limitations."). *See also, e.g.*, PageID.287 ("headaches are mostly controlled and no syncopal episodes" in March 2016); PageID.291 ("No evidence of increased [intracranial pressure] and no focal neurological findings so possibility of mass lesion is remote" in September 2016); PageID.293 ("[m]igraine headaches controlled" in November 2016); PageID.473 (diagnosed with "Migraine w/o aura, not intractable, w/o status migrainosus" in September 2017); PageID.481-97 (headache "not the worst, "better" onset/timing, reported no nausea, no vomiting, no sensitivity to light, no tearing/water eyes, no confusion, no slurred speech, no preceding aura, no double vision, no dizziness, no sleep disturbance, and normal feeling/sensation, and no diagnosis of "migraines" between March and July of 2019).

Dated: August 5, 2022  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2022.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager